Municipal Court of Charlestown, }
    Dec. 4, 1934.

ALFRED C. SMITH *v.* LUCIUS S. TALLMAN.

*James D. Spooner* (by brief and orally), for the plaintiff.

*Hugh Moore* (by brief and orally), for the defendant.

PAGE, J. "All writs issuing out of the clerk's office in any of the courts of law, shall be in the name of the state of New Hampshire; shall be under the seal of the court whence they issue, and bear test of the chief, first or senior justice of the court; but when such justice shall be interested, then the writ shall bear test of some other justice of the court, to which the same shall be returnable; and be signed by the clerk of such court." Constitution, Part II, *art.* 87.

"Writs and processes issuing returnable to any court shall be in the name of the State of New Hampshire, shall be under the seal of the court, shall bear *teste* of the chief, first, senior or other justice of the court who is not a party, and shall be signed by the clerk; . . ." P. L., *c.* 330, *s.* 2. This act had its origin in the act of February 9, 1791.

The requirement of the signature of the clerk, in both the constitution and the statute, is for the purpose of authenticating the writ. Obviously this might have been done by requiring the signature of a justice, but the framers of the constitution of 1784 and of the statute of 1791 adopted what was already the practice in the three organized courts of the state (2 N. H. Laws, 136, 137, 303-307) and provided for authentication by signature of the clerk.

The act of 1791, 5 N. H. Laws, 621, applied the constitutional test to writs and processes issuing from the three organized courts having clerks, but provided that all writs issuing from any justice of the

peace should be in the form prescribed by law, should be under seal, and should be signed by the justice. Since justices' courts were unorganized and had no clerks, the constitutional provision had no application to them, and neither then nor since has it been necessary for process issued by a justice of the peace to be authenticated in any way except by a seal and the signature of the justice.

When police courts came into being in 1852 to assume some of the jurisdiction of justices of the peace, there was at first no provision for clerks (Laws 1852, *c.* 1282, *s.* 8), hence no question could arise about the authentication of writs; the police courts would follow the forms of process issued by justices of the peace.

In connection with the revision of 1867 a provision was inserted that the justice of a police court might appoint a clerk if provision was made for his compensation, and that in default of such appointment the justice should be clerk and keep a full record of his proceedings. G. S., *c.* 196, *s.* 3; Report of Commissioners, *c.* 197, *s.* 3. The last clause was no more than a declaration of the duty laid upon the clerkless justice by Laws 1852, *c.* 1282, *s.* 8, the original act creating police courts.

The commissioners, Judges *Bell, Fowler,* and *Sawyer,* left pretty clear evidence of their view of the constitutional method of authenticating writs. In police courts having appointed clerks the writ should bear the *teste* of the justice and be signed by the clerk. Comm'r's, Report, *c.* 197, *s.* 7; G. S., *c.* 196, *s.* 7. On the other hand writs issued by clerkless justices (whether justices of the peace or justices of police courts) were to be signed by the justice himself, as such, just as clerkless justices had always issued and signed writs before and during the constitutional period. Comm'r's, Report, *c.* 204, *ss.* 11, 12; G. S., *c.* 203, *ss.* 11, 12. The changes made permit but one interpretation, and that was made perfectly clear in P. S., *c.* 218, *s.* 12, though the change in wording was noted by the commissioners as verbal. Comm'r's, Report, *c.* 217, *s.* 12. And so the statute and practice have been ever since. P. L., *c.* 330, *s.* 12.

The practical construction of the constitution has remained the same ever since 1867, when some of the police courts acquired clerks, that is, the practice since 1867 in courts without appointed clerks has been assimilated to the practice of justices of the peace from the beginning of the constitutional period; writs issuing from such courts have been signed by the justice. Such writs do not come within article 87 of Part II of the constitution because they are not "writs issuing out of the clerk's office." This practical construction of

sixty-seven years is the only sensible one, for it avoids the absurdity of a *teste* by the justice authenticated by the signature of the justice as "clerk." It was conceded by the motion to dismiss, and also in argument, that in the case in hand the writ was signed by the justice. To require that he should also sign it as "clerk" would add nothing to its authenticity, and neither the constitution nor the statute imposes any such meaningless formality. The process was valid, and the municipal court had jurisdiction of the cause.

It is not contended that municipal court cases may not be continued monthly from term to term. There is no evidence that the case in hand was so continued other than the ruling of custom. The defendant's exception to this ruling as incompetent and not supported by evidence is of no avail. The special justice was competent to know and declare the custom of his own court, and that custom was the practical equivalent of a rule. The court had the power to make a rule (*Carr* v. *Adams*, 70 N. H. 622), and the rule adopted by custom was reasonable and appears to have been followed in this case. The defendant complains that he never heard of any continuance. The plaintiff had no greater responsibility to move monthly for a continuance and to notify the defendant thereof than the defendant had to insist upon the determination of his motion to dismiss at the first term. Under the circumstances of delay by both parties, the continuance as a matter of course for six months is not so unreasonable as to be cause for complaint.

The defendant's objection to further proceedings on May 28 and June 2, 1934, on the ground that the original writ and return could not then be found, cannot avail him. The writ had been duly entered, and the municipal court had jurisdiction of the cause. There was no defect in the process and no dispute as to parties, declaration, *ad damnum*, service, or any other matter making doubtful to the court or to the defendant either the jurisdiction or the nature of the action. The defendant had the copy of the writ which had been served on him, and moreover his counsel on the return day made full examination in court of the original writ and had every opportunity to know all matters in issue or bearing upon the validity of the process. The record of the court may be perfected by filing a copy of the writ and return. *Whitcher* v. *Whitcher*, 10 N. H. 440.

The exception taken to the judgment raises no questions other than those of jurisdiction already determined. If the defendant has a substantial defence to the merits of the action, it can be asserted only by application to the trial court. He had no opportunity to make

180

such a defence without the possible risk of making his appearance general and waiving the jurisdictional issues. Whether justice now requires that the judgment should be vacated, the verdict set aside, and the defendant given his day in court upon the merits, would be for the municipal court to determine if the defendant should make an application for those purposes. *Thompson* v. *Ela*, 58 N. H. 490, 493. The order here must be

*Exceptions overruled.*

All concurred.